IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JUDY BATISTA )
)
Plaintiff, )
)
v. ) Case No. 23CV993
)
Duke University Health Systems )
)
Defendant. )
)

## COMPLAINT

Plaintiff Judy Batista (hereinafter "Plaintiff"), Pro se, complains of Duke University Health Systems (hereinafter "Defendant") as follows:

### INTRODUCTION

1. This is a civil rights complaint for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and a State Claim of Wrongful Termination pursuant to NC Gen. Stat. §143-422.2(a).

2. From May 13, 2019, through August 8th, 2022, Plaintiff was employed as a Speech-Language Pathologist with Duke University Health Systems. During this time, Duke Speech-Language Pathology and Audiology.

3. At the date of Plaintiff's employment, she had earned an advanced degree in Speech Pathology and had amassed sixteen years of experience in her field.

4. While working for the Defendants, the Plaintiff was obliged to go through a privileging process. This process included working under the supervision of students and individuals who were less qualified than her. The Plaintiff was required to perform a series of procedures approved by people less qualified than her just to be allowed to work with patients.

5. The defendant's privileging process hindered the plaintiff's career progression due to implicit bias against minorities in speech pathology.

6. When the plaintiff reported that the processes and individuals in control of her career progression at Duke University Health System created a hostile work environment, she faced retaliation from Duke University Health System's agents and was ultimately terminated.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 §U.S.C. §§ 1131 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391 because all of the conduct complained of occurred within this District.

## PARTIES

9. Plaintiff Batista is an adult resident of the State of North Carolina. From [Dates of Employment], Plaintiff was employed by Duke University Health Systems at its [address].

10. Defendant Duke University Health Systems is a North Carolina healthcare system headquartered in North Carolina. The defendant owns and operates healthcare systems in this District.

## PROCEDURAL BACKGROUND

11. Plaintiff Judy Batista exhausted her administrative remedies at the Equal Employment Opportunity Commission.

12. The U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") found reasonable cause to believe violations of Title VII occurred. The EEOC issued Plaintiff a Notice of Right to Sue, which Plaintiff received on August 21, 2023. A true and correct copy of that notification is attached as **Exhibit A**.

13. This complaint is being filed within 90 days of the Plaintiff's receipt of the EEOC Notice of Right to Sue.

## ALLEGATIONS OF FACT

14. On or about May 2019, Judy Batista (hereinafter "Plaintiff") began employment with Duke University Health Systems (hereinafter "Employer") in the Department of Speech Pathology as a Licensed Speech-Language Pathologist.

15. On or about May 2019, Plaintiff completed the required hospital orientation for a speech-language pathologist and received directions to report to Baker House, the designated site for leadership staff offices within the Department of Speech Pathology and Audiology.

16. Upon arriving at Baker House, it was immediately apparent to the plaintiff that a significant disparity existed in the department. The clerical staff was composed predominantly of African-American women, while most upper management and clinicians were of Caucasian ethnicity. This demographic makeup did not align with that of Durham, North Carolina, and it was a stark difference from the national average in the Speech Pathology career field.

17. During Plaintiff's third day of employment at Duke University Hospital, she encountered a list of suggested African-American names posted above a mini fridge in the Duke North Pediatric In-Patient Second Floor Office.

18. During Plaintiff's tenure with Employer, she witnessed upper management and other clinicians adding names of African-American patients to a list they deemed comical.

19. In August 2019, Plaintiff finished the trial period of sixty and ninety days as per the Employer's Policy Trial Period 02.06. This policy outlines that during this period, the staff member and the supervisor assess the job expectations and the staff member's knowledge and skills. It allows the staff member to decide whether the position meets their expectations and the supervisor to determine if the staff member meets the job requirements.

20. During the Employer's Policy Trial Period on or about June 2019, Megan Urban, Plaintiff's clinical coordinator, did not express any concerns regarding Plaintiff's employee, transfer, or promotion-expected behaviors during the 60-day review meetings.

21. During Plaintiff's employee, Transfer, or Promotion-Expected Behaviors Review meetings in August 2019, Ms. McMechan, Plaintiff's preceptor and coordinator responsible for the 90-day review, did not express any concerns.

22. During the probationary period under Employer's Policy Trial Period 02.06, Plaintiff consistently met or exceeded all expectations in her performance reviews.

23. Plaintiff also received privileges for Clinical Swallowing from birth to 6 months and Dysphagia Treatment from birth to 3 years in the Intensive and Transitional Care Nursery. This process is known as the "three-level review" or "privileging."

24. During granting privileges, an employee is assigned a preceptor or trainer responsible for teaching and approving specific clinical areas using a checklist. However, this process is subjective and not objective. In the case of Plaintiff, Ms. McMechan, a speech pathologist with less clinical experience than Plaintiff, was assigned as Plaintiff's preceptor.

25. Plaintiff claims that the clinical coordinator, Megan Urban, did not follow the department protocol for the privileging processes. The failure to adhere to established protocols and inconsistencies with established procedures can be found in the employee files of other speech pathologists in the same department. Megan Lynch and Komal Williams are two examples of such employees.

26. In September 2019, shortly after returning from Paid Time Off, there was a meeting with clinicians, which Plaintiff's preceptor, Ms. McMechan, convened. After the meeting, Ms. McMechan requested that Plaintiff remain behind. During their conversation, Ms. McMechan criticized Plaintiff for not asking enough questions during the training process. As a result, Ms. McMechan informed Plaintiff that weekly one-on-one meetings would now be required. This was one of several incidents where Ms. McMechan engaged in micro-aggressions towards Plaintiff.

27. During a conversation, the Plaintiff inquired with Ms. McMechan whether her failure to make inquiries had jeopardized the patient's safety. Ms. McMechan reassured the Plaintiff

that it was not the case. She stated that the conversation in the meeting would remain between the plaintiff and Ms. McMechan.

28. The plaintiff informed Ms. McMechan that she felt she was being treated differently than her colleagues despite having equivalent credentials, proficiency in multiple languages, and expertise in both adult and pediatric domains. Additionally, the plaintiff had more years of experience than Ms. McMechan herself. However, Ms. McMechan responded in a way that suggested she viewed the plaintiff as intellectually inferior.

29. The plaintiff alleges that between September 2019 and January 2020, she was compelled to attend weekly meetings with Ms. McMechan, who started to observe her treatment sessions, even though the plaintiff was authorized to treat patients independently in the ICN and TCN. This was purportedly done to intimidate and harass the plaintiff and is said to have breached the employer's Harassment and Discrimination Policy 03.04. Ms. McMechan allegedly continued to undermine the plaintiff's professional competence and skills, eroding trust among patients that the plaintiff served and further creating a hostile work environment for the plaintiff.

30. Ms. McMechan began to pressure Plaintiff to forego taking paid time off and would instead require Plaintiff to make up the time. This created an unsustainable and unhealthy work schedule for Plaintiff, further contributing to a hostile work environment for Plaintiff. Ms. McMechan's behaviors led to a significant impact on Plaintiff's work-life balance and caused Plaintiff severe mental and emotional anguish.

31. The plaintiff sought medical help in March 2020 due to doubts about her sanity and feelings of dehumanization caused by Ms. McMechan's behavior.

32. On or about March 2020, Dr. Jodi Hawes, with Duke University Hospital, diagnosed Plaintiff with severe work-related anxiety. Dr. Hawes further recommended psychotherapy and medication as a means to help Plaintiff cope with the work-induced anxiety she was experiencing.

33. The plaintiff began treatment with Dr. Beth Ann Blue in May 2020 through Duke's Personal Assistance Services.

34. The plaintiff received a positive annual performance review from Ms. Vallabh from July 2019 to June 2020. Ms. Vallabh, who was unaware of Ms. McMechan's negative behaviors towards the plaintiff, acknowledged that the plaintiff had met all expectations regarding Duke University Health System principles. Additionally, Ms. Vallabh praised the plaintiff's pleasant demeanor and exceptional ability to incorporate feedback into their clinical development. This feedback starkly contrasted with Ms. McMechan's negative feedback towards the plaintiff.

35. During a meeting on or around October 19, 2020, the plaintiff expressed her concerns to Ms. Vallabh and Ms. McMechan regarding Ms. McMechan's request for the plaintiff to make up Paid Time Off, the need for a healthy work-life balance and Ms. McMechan's micro-aggressions which had escalated to become abusive and demeaning.

36. During the meeting, the plaintiff also discussed the discrepancies in clinical responsibilities and opportunities compared to their colleagues. She pointed out the differences in professional advancement prospects and highlighted how she was frequently assigned menial tasks like translating documents into her native language, Spanish.

37. On or around October 28th, 2020, the plaintiff emailed Ms. Irby, Interm Chief of Speech Pathology, and Ms. Vallabh, expressing concerns about the disparity in treatment between the plaintiff and their white colleagues in the department. In the email, the plaintiff also complained about McMechan's microaggressions, retaliatory actions, and intimidations. Despite this, upper management in the department failed to provide any recourse for the plaintiff's experiences.

38. Other employees began to inquire with the plaintiff as to why she was being treated differently by upper management. The inquiries from her colleagues reinforced the plaintiff's belief that she was indeed being treated differently.

39. On or around November 16, 2020, the plaintiff requested a meeting with Ms. Gordon, Outpatient Pediatric Clinical Coordinator. During the meeting, the plaintiff raised concerns about the disparities among employees of color within the department and mentioned Ms. McMechan's behavior towards the plaintiff. Ms. Gordon acknowledged the plaintiff's concerns and documented them through notes. Ms. Vallabh and Ms. Irby also admit they knew the plaintiff's circumstances and allegations. However, no action was taken in response to the plaintiff's complaints.

40. During a Zoom video meeting on February 9, 2021, Plaintiff reiterated her concerns to Ms. Irby and Ms. Vallabh, following up on her previous conversation with Ms. Gordon. The plaintiff provided specific examples of the disparities and behaviors she was facing. Despite bringing her valid concerns to the attention of the proper officials, they were never taken seriously or addressed. This added to the already hostile work environment created by Ms. McMechan.

41. Between February and June 2021, Ms. McMechan and Ms. Vallabh subjected the plaintiff to multiple instances of retaliation, harassment, and intimidation following a meeting that took place around February 9, 2021.

42. One form of retaliation occurred when Megan Lynch, the plaintiff's preceptor, completed and submitted the necessary documentation to Baker House for the employer's privileging process. According to the Employer, the forms needed Ms. Vallabh's signature in order for the privileging to be official. However, Ms. Vallabh claimed that she would not sign the form as she continued to question plaintiff's consistency in care despite Megan Lynch completing the necessary process for privileging. Additionally, white colleagues were not required to have a Clinical Service Coordinator signature on their forms.

43. Ms. Vallabh resorted to another form of retaliation when she began criticizing the Plaintiff's documentation, even though the Plaintiff had completed and submitted all the necessary documentation for the privileging process. Ms. Vallabh had no prior experience in the areas she critiqued the Plaintiff for. Her behavior was retaliatory and an abuse of power, as she was trying to force the Plaintiff to resign from her position.

44. Plaintiff filed a formal complaint with the Office of Institutional Equity on December 23, 2021. However, the chain of command did not result in any meaningful resolution.

45. On January 13, 2022, the Plaintiff had an intake meeting with Ms. Stovall of the OIE. During the meeting, Ms. Stovall informed the Plaintiff that her allegations would be investigated further.

46. On February 3, 2022, the plaintiff was scheduled to meet with Megan MacDonald, J.D., to discuss her complaints. The plaintiff gave a detailed account of the events that had

taken place, along with evidence of the bias and retribution she was experiencing. The meeting was recorded and lasted for two hours.

47. Plaintiff had asked Megan MacDonald, J.D., and Ashley Edwards to prohibit direct contact with the people she complained about, as it was allowed by Duke's Policy, VII Formal Investigations, E. Supportive Measures. However, her requests were never granted, and she had to continue working directly with those individuals who were responsible for discriminatory behaviors against her.

48. After the Plaintiff's OIE meetings, Ms. Vallabh contacted the Plaintiff on February 21, 2022 for a meeting. The Plaintiff requested that a third party, Ms. Reed, Human Resource Representative, for the department, be present in the meeting. The Plaintiff was given a written warning and a performance plan during this meeting.

49. The plaintiff was placed on a performance improvement plan despite already being approved through the required privileging process.

50. The plaintiff had requested to work under a supervisor different from Ms. McMechan, specifically under the preceptorship of Ms. Villaverde. However, this request was denied, and the plaintiff was forced to continue working in the hostile work environment created by Ms. McMechan.

51. The plaintiff received a new preceptor in March 2022 and was informed that Ms. McMechan had been made aware of the Plaintiff's complaint.

52. Plaintiff alleges that upper management members subjected Plaintiff to remedial questioning regarding clinical knowledge via email and conversations, continuing retaliation.

53. On or about April 19, 2022, Plaintiff received a final warning/suspension from Ms. Vallabh for not completing privileges within the assigned timeframe. It appears that the issues with the Plaintiff's performance began to escalate after she raised concerns about the disparity in treatment between white colleagues and minorities at the company. It appears that upper management may have retaliated against Plaintiff for speaking up.

54. Plaintiff submitted a formal complaint with the United States Equal Employment Opportunity Commission (EEOC) on or about April 25, 2022.

55. On August 8, 2022, Ms. Vallabh requested a meeting with the Plaintiff via text message. The meeting was attended by Plaintiff, Ms. Vallabh, Ms. Reed, and Mr. Daniel King. During the meeting, Plaintiff received a Termination Notice that accused her of violating the company's policies.

56. The reason for the Plaintiff's termination was supposedly because she had sent a text message to Ms. Vallabh, which only contained the first name of a patient. It was believed that this violated Duke's policy. However, it was later discovered that Duke's policy states that a Breach of Protected Health Information is considered when more than two identifiers are used to identify a patient (first name and last name).

57. Plaintiff claims that the Speech Pathology Department regularly used the Employer's paging system, even when clinicians worked outside their regular hours, so such termination was wrongful and based on discrimination against Plaintiff due to Plaintiff's race.

## COUNT I

## TITLE VII—

## DISCRIMINATION AND RETALIATION BASED ON RACE

59. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

60. Plaintiff is a member of a protected class on the basis of race. She is an Afro-Latina female.

61. Plaintiff, in all respects, was performing her job in a manner consistent with Employer's legitimate business expectations.

62. Employer and its agents discriminated against Plaintiff as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions, and terminating her.

63. Employer's agents also retaliated against Plaintiff as described above.

64. Employer and its agents' actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

65. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## COUNT II

## SECTION 1981—DISCRIMINATION AND RETALIATION ON THE BASIS OF RACE

66. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

67. Plaintiff is a member of a protected class on the basis of race. She is an Afro-Latina woman.

68. Plaintiff, in all respects, was performing her job in a manner consistent with the Employer's legitimate business expectations.

69. Employer and Employer's agents discriminated against Plaintiff as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions, and terminating her.

70. Employer's agents also retaliated against Plaintiff as described above.

71. Employer and Employer's agents' actions were taken with a willful and wanton disregard of Plaintiff's rights under Section 1981.

72. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages

## COUNT III

## TITLE VII- HOSTILE WORK ENVIRONMENT DUE TO RACIAL DISCRIMINATION

73. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment because of such an individual's race. Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action. As shown in the preceding allegations, the alleged conduct based on Plaintiff's race was unwelcome, was based on her race, and was sufficiently severe and pervasive, such as to alter the conditions of her employment and create an abusive work environment that was attributed to her employer.

74. The plaintiff communicated her objection to discriminatory treatment on the basis of her race to her employer on multiple occasions. In response to Plaintiff's complaints, Defendant took no action to prevent continuing discriminatory treatment of Plaintiff on the basis of her race.

75. The discriminatory conduct in Defendant's workplace was so severe and pervasive as to create a hostile work environment both subjectively and objectively for Plaintiff. The Defendant's employer was aware of the hostile work environment and took no action to correct it.

76. The plaintiff is part of a protected class under Title VII and suffered an adverse employment action based on her race.

77. The elements of a Hostile Work environment claim are the same under Title VII and 42 U.S.C. §1981.

## COUNT IV

## WRONGFUL TERMINATION BASED ON RETALIATION & RACE DISCRIMINATION

78. North Carolina General Statute §143-422.2(a) makes it unlawful for an Employer that regularly employs 15 or more employees to discriminate, abridge an individual's ability to seek, obtain, and hold employment on account of race, religion, color, national origin age, sex or [disabilities].

79. Duke University Health Systems (hereinafter "DUHS") is an employer that regularly employs 15 or more employees.

80. DUHS knowingly allowed Plaintiff to be discriminated against by other upper management agents of DUHS's Speech Pathology Department.

81. Despite being aware of Plaintiff's allegations, DUHS failed to handle them appropriately. As a result, Plaintiff continued to experience a Hostile Work Environment that DUHS knew about and which was based on allegations of racial discrimination against Plaintiff. DUHS's upper management and clinicians were propagating this discrimination in the Speech Pathology Department.

82. The Duke University Health System (DUHS) subjected the plaintiff to retaliation by its upper management and clinicians after the plaintiff reported racial discrimination, implied racial bias, and the systemic and racially disparaging privileging process used by the DUHS Speech Pathology Department. The department's practices perpetuated discrimination against minorities, which the plaintiff had brought to light through the proper channels.

83. The Duke University Health System (DUHS) permitted upper management to wrongly terminate the plaintiff by incorrectly applying DUHS's policy regarding the use of patient names, thus allowing the speech pathology department's upper management team to retaliate against the plaintiff. This action violated NC Gen. Stat. §143-422.2(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Batista prays that this Court:

A. Enter judgment in favor of Plaintiff and against the Defendant for violation of Plaintiff's Rights under Title VII, the State Claim of Wrongful Termination, and Section 1981;

B. Declare that the actions of the Defendant constituted unlawful discrimination;

C. Award Plaintiff compensatory damages, including, but not limited to, lost wages and benefits, in such amount as will reasonably compensate her for her losses and damages for emotional distress;

D. Award Plaintiff punitive damages in such amount as the Court deems proper;

E. Award Plaintiff her costs, court fees, and non-taxable expenses in this action; and

F. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff Judy Batista hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: November 17, 2023

Respectfully submitted,

/s/ Judy Batista, pro se

772 Millbrook Drive

Pittsboro, NC 27312

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, NC 27601
(984) 275-4800
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 8/21/23

**To:** Judy Batista
772 Millbrook Drive
Pittsboro, NC 27312
Charge No: 433-2022-01185

EEOC Representative and email:  Arely Tochez
Investigator
arely.tochez@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 433-2022-01185.

On behalf of the Commission,

Johnnie M. Barrett
Area Director

Digitally signed by Johnnie
M. Barrett. Area Director
Date: 2023.08.21 08:25:31
-04'00'

Johnnie Barrett
Area Director

Cc:
Anne Fox
310 Blackwell St Fl 4
Durham, NC 27701

Please retain this notice for your records.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, NC 27601
(984) 275-4800
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: Seot. 14, 2023

**To:** Judy Batista
772 Millbrook Drive
PITTSBORO, NC 27312
Charge No: 433-2022-02638

EEOC Representative and email:     KRISTEN DISCEPOLA
Investigator
kristen.discepola@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 433-2022-02638.

On behalf of the Commission,

**Johnnie M. Barrett** Digitally signed by Johnnie M.
**Area Director** Barrett, Area Director
Date: 2023.09.14 14:06:35 -04'00'
Johnnie Barrett
Area Office Director

Cc:
Anne Fox
310 BLACKWELL ST # 4
Durham, NC 27701

Please retain this notice for your records.